## Postal Telegraph Cable Co. v. Louisville Cotton Seed Oil Co.

(Decided November 2, 1910.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, First Division).

Contracts—Offer to Sell—Conditional Acceptance—Not Binding.—
W. & Co., independent brokers. sent the following telegram to the Louisville Cotton Seed Oil Company: "On firm offer can sell ten tank cars bleachable prime summer yellow oil 27c Chicago, September. Answer;" to which this answer was sent on the same day: "Telegram received and offer accepted 27c Chicago ten tank cars bleachable prime summer yellow oil, Memphis Exchange rules and arbitration. On receipt of this please telegraph buyer's name." Held, that the mere delivery of the answer to the brokers' telegram at the telegraph office, giving the broker authority to sell, would not bind the intending purchaser. Actual acceptance before the time limit expires being absolutely necessary to make the sale binding.

RICHARDS & RONALD, ARTHUR B. BENSINGER and W. W. COOK for appellant.

O'DOHERTY & YONTS for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Affirming.

This is the second appeal of this case. The opinion on the former appeal may be found in 136, Ky. 843. In that opinion this court discussed several questions not now before us, and remanded the case for a new trial in conformity with the opinion.

Upon the return of the case a second trial was had, which resulted in a verdict and judgment for appellee in the sum of $1,000. From that judgment this appeal is prosecuted.

The facts developed on the second trial are as follows: L. C. Doggett was general superintendent of N. K. Fairbanks & Co. In that capacity he was authorized to purchase raw material, cotton seed, oil, etc. On September 11th, 1905, he made an offer to R. D. Winship, of R. D. Winship & Company, a firm of brokers in Chicago, of 27 cents per gallon for ten tanks of P. S. bleaching oil, September shipment, delivery at Chicago. This offer was to be accepted by six o'clock p. m. of that day. It was afterwards agreed by Doggett and Winship that if the acceptance was delivered before twelve o'clock on the night of September 11th, Fairbanks & Company would confirm the purchase and accept the oil.

At 4:16 p. m. on September 11th, 1905, R. D. Winship & Co. sent the following telegram to the Louisville Cotton Oil Company, in cipher, which, when translated, reads as follows: "On firm offer can sell ten tank cars bleachable prime summer yellow oil, 27 cents Chicago, September. Answer." At 4:40 p. m. on the same day the Louisville Cotton Oil Company sent an answer in cipher, which, when translated, reads as follows: "Telegram received and offer accepted 27 cent Chicago, ten tank cars bleachable prime summer yellow oil. Memphis Exchange rules and arbitration. On receipt of this please telegraph buyer's name." This telegram was received at appellant's Chicago office at 4:55 p. m., and was sent by a messenger boy to the office of Winship & Co. Winship and his clerk left the office early in the afternoon, and no one was present when the messenger boy arrived. The boy put the telegram under the door of the office, where it was found by Winship the next morning. Winship & Company, however, had an understanding with the telegraph company that all telegrams addressed to them and received at the office of the telegraph company after Winship & Company's office was closed should be communicated to Winship at his residence by telephone. Numerous telegrams were received by the telegraph company on the afternoon and evening in question, and were transmitted to Winship by telephone. Winship also called up the telegraph company several times during the evening and asked for telegrams. The telegram in question was never transmitted to him or any one

else connected with the firm. When the telegram was found on the morning of February 12th, the market had broken and the price of oil had declined. Fairbanks & Company declined to confirm the purchase and receive the oil.

The following is one of the rules of the Memphis Merchants' Exchange:

"On all trades by telegraph, day messages requiring day answers shall be open until twelve o'clock midnight, of the day on which sent; night messages shall be open until noon following the night on which sent, the time when telegrams are filed in telegraph office sending same to govern, and the rule to apply only when no specific time is stated in the original offer."

There was also testimony going to show that the Interstate Cotton Seed Crushers' Association, of which appellee and Winship & Company were members, had a similar rule.

Both at the conclusion of appellee's evidence and at the conclusion of all the evidence appellant asked for a peremptory instruction, which the court declined to give. It is now insisted that the trial court erred in this respect.

It is the contention of appellant that, under the rules of the Memphis Merchants' Exchange and the Interstate Cotton Seed Crushers' Association, and according to the elementary principles of the law of contracts, the acceptance took effect when the answer of appellee was filed in the telegraph office at Louisville; that, therefore, appellee had a binding and enforcible contract notwithstanding appellant's negligence in failing to deliver the telegram, and, consequently, was not damaged by said negligence. As stated above, the evidence does show that the rules of the two exchanges referred to provide that the time when telegrams are filed in telegraph offices in sending the same shall govern where no specific time is stated in the original offer. It may also be conceded that, where a person makes an offer and requires or authorizes the offeree, either expressly or impliedly, to send his answer by post or telegraph, and the answer is duly posted or telegraphed, the acceptance is communicated and the contract is complete from the moment the letter is mailed or the telegram sent. Since agreements made by means of the post or the telegraph are simply an illustration of the general rule, that the offerer takes the risk as to the effectiveness of communication, if the

acceptance is made in the manner, either expressly or impliedly, indicated by him, it necessarily follows that the contract is complete as soon as the letter containing the acceptance is mailed or the telegram sent; and it makes no difference whatever that through mistake of the post-office authorities or the telegraph company or through accident in transmission, it is delayed or lost in transit and never received by the offerer.'' 9 Cyc. 295, Carter v. Hibbard, 26 Ky. Law Rep. 1033, Joyce on Electric Law, vol 2, sec. 881, Jones on Telegraph and Telephone Companies, sec. 731. But neither the rule of the exchanges nor the rule of law above referred to has any application to the facts of this case. Fairbanks & Company had the right to attach any condition they pleased to the offer which they made to Winship & Company. Their offer to Winship was only binding in the event they were notified of its acceptance before six o'clock p. m., February 11th, or, at the furthest, before twelve o'clock on that night. The evidence is clear and explicit upon this point. Winship & Company were in no sense the agents of Fairbanks & Company, with authority to bind the latter because of their failure to specify any condition in their telegram to the Louisville Cotton Oil Company. Winship & Company were independent brokers. They did not make any offer to appellee for the oil in question; they stated that they had an offer and could sell at 27 cents. When appellee accepted, it simply authorized Winship & Company, as brokers, to sell at the price named. It did not thereby secure a contract binding either Winship & Company or Fairbanks & Company to accept the oil and pay for it. As the telegram in question was not received in time to enable Winship & Company to accept the offer of Fairbanks & Company, and, as Winship & Company were, therefore, unable to make the sale pursuant to the authority contained in the telegram, it necessarily follows that appellant's negligence prevented the sale of the oil according to the terms of the offer. If Fairbanks & Company had made a direct offer to appellee, a different question would be presented. Then there might be some merit in appellant's contention, that appellee still had an enforcible contract notwithstanding appellant's failure to deliver the telegram. But this rule certainly could not apply to a case where the party intending to purchase made the offer to an independent broker, accompanied by the condition that the offer was good only in the event the purchaser received notice of its

acceptance before a specified time, and the broker should fail to state, in his telegram asking for authority from another to make the sale at the price quoted, the conditions attached to the offer. In such a case the mere delivery of the answer to the broker's telegram at the telegraph office, giving the broker authority to sell, would not bind the intending purchaser. Actual acceptance before the time limit expires is absolutely necessary to make the sale binding.

As the case was tried out in accordance with our former opinion, and as the court did not err in refusing to award appellant a peremptory instruction, we conclude that the judgment should be affirmed, and it is so ordered.