### BELL et al. v. WESTERN UNION TELEGRAPH CO.

No. 1231—5604.

Commission of Appeals of Texas, Section B.
March 4, 1931.

John L. Dodson, of Del Rio, for plaintiffs in error.

Henry G. Russell, of Pecos, and Francis R. Stark, of New York City, for defendant in error.

SHORT, P. J.

The plaintiffs in error filed this suit against the defendant in error, alleging a damage of $2,500, resulting from the negligent failure of the defendant in error to transmit the following telegram:

"October 17, 1928.
"John T. Peavey, 220 Binz Building, Houston Texas.

"Depending on terms and representations made in our correspondence we accept the proposition of trade. Have owner wire confirmation and send his abstracts to me and I will send our abstracts to you for examination. When deeds approved will close. Will pass deeds through John T. Dandridge.

"Ira J. Bell."

The case was tried to the court alone upon testimony offered by the plaintiffs in error, the defendant in error having offered none. The court filed findings of fact and conclusions of law, after having rendered judgment for the defendant in error. Upon appeal to the Court of Civil Appeals the judgment of the trial court was affirmed. 21 S.W.(2d) 39.

The statement of facts support the material findings of fact, as found in the record filed by the district judge. These findings of fact, in so far as they are material to the question of law presented, are as follows: That the telegram was sent as alleged; that it was not delivered and failure to deliver constituted negligence; that if it had been delivered in due time the trade would have been consummated; that the plaintiffs in error suffered a loss of $2,500 by reason of their failure to consummate the trade, which would have been consummated had the telegram been delivered in due time.

The record further discloses that the agent of the owner of the property located in the city of Houston was expecting to receive from the owners of ranch property, located in Reeves county, an immediate reply either accepting or rejecting the proposition, which the agent had made to them. Upon the other hand, it is also apparent from the record that the owners of the ranch property, after having sent the telegram, were expecting to receive from the owner of the Houston property a message confirming the proposition which had been made by the agent. It is also apparent that the failure of defendant in error to deliver the message sent by the owners of the ranch property created a situation which resulted in a mutual misunderstanding of the parties, and, before this misunderstanding had been cleared up by correspondence, the owner of the Houston property had reached the conclusion that the owners of the ranch property had declined to accept the proposition made by the agent and had disposed of the property to other parties. It is also inferable from the testimony of the owner of the Houston property that he would have confirmed the proposition made by his agent, and that the trade would have been consummated had the message been delivered to the agent without delay, and that this was the real cause of the failure of the parties to consummate the trade. The owners of the ranch property, being without information, requested in the telegram, that the owner of the Houston property confirm the proposition of trade, made by the agent, the reasonable conclusion to be drawn of this situation is that the owner of the Houston property had refused to confirm the acts of his agent. The agent of the owner of the Houston property having failed to receive any reply to his proposition, made to the owners of the ranch property, the owner of the Houston property reasonably concluded that the former had declined to accept the proposition made by the agent. Had the telegram been delivered without delay, no such misunderstanding of the parties would have arisen.

But the trial judge concluded, as a matter of law, that the plaintiffs in error, under the facts found, had a cause of action against the owner of the Houston property, but did not have any against the defendant in error, which view of the law the Court of Civil Appeals concluded was correct, under the following authorities: Telegraph Company v. Killian (Tex. Civ. App.) 1 S.W.(2d) 378; Telegraph Company v. Gardner (Tex. Civ. App.) 278 S. W. 278; Telegraph Company v. Fletcher (Tex. Civ. App.) 208 S. W. 748.

The authorities cited by the Court of Civil Appeals in support of its opinion are not applicable to the facts of this case. In each of the authorities cited, supra, the facts show that the contract between the parties was completed by the filing with the telegraph company of a telegram of unconditional acceptance of an offer, which was made with directions to accept by telegram, which situation resulted in a completion of the contract without reference to the delay of the message of acceptance to the offerer. In this case the telegram filed with the telegraph company was not an unconditional acceptance of the offer made by the agent. There is a condition attached to the acceptance. That condition was that the owner of the Houston property should wire to the owners of the ranch property a confirmation of the proposition which had been made by the person assuming to act as the agent of the owner of the Houston property, and, until this condition had been met, the contract was incomplete. Neither party to the transaction, at the time the telegram was filed, under the circumstances, was in a position to compel the other party to complete the contract, for the reason that the contract was not a completed one at that time.

The Supreme Court in granting the writ of error in this case, made this notation: "When Bell's telegram requested confirmation we are inclined to the view that the Telegraph Company was liable for any resulting damages."

The record in this case shows that the negotiations resulting in the sending of the telegram had been conducted by correspondence between Ira J. Bell, one of the plaintiffs in error, at Pecos, Tex., and one John T. Peavey, at Houston, Tex., the latter being alleged in the petition to be the agent of the owner of the Houston property, and the former being the owners of certain ranch lands in Reeves county, Tex., each piece of property being incumbered with a lien. The title to each piece of property is not called in question by the record at the time the telegram was sent. The owners of the ranch property, at the time the telegram was sent, did not know to whom the Houston property belonged, nor did they know that Peavey was authorized by the owner of the Houston property to consummate the trade. Apparently the purpose of the telegram was to secure confirmation from the owner of the Houston property of the authority of Peavey to make the trade, and apparently the owners of the ranch property desired this confirmation before they were willing to accept, as genuine, the terms and representations made by Peavey in his letters to them, submitting the proposition of trade made by Peavey, and before they would be willing to send their abstract of title to Peavey for examination, or to go to the trouble and expense of examining the abstract of title to the Houston property.

The Court of Civil Appeals discloses its idea of the law of this case by the use of this language: "The case made by the petition shows that Calloway [the owner of the Houston property], acting through his agent, Peavey, submitted to appellants an offer to exchange, requesting a reply by wire. This offer appellants accepted by delivering to appellee for transmission and delivery to Peavey a telegram of acceptance. Upon this state of facts the contract to exchange was completed by the filing with appellee of the telegram to Peavey, and, for the breach of such contract by Calloway, appellants have a cause of action against Calloway, but none against appellee for negligent delay in the transmission and delivery of the message to Peavey."

In speaking of a similar situation in Western Union Telegraph Company v. Turner, 94 Tex. 304, 60 S. W. 432, 433, the Supreme Court of this state said: "The language of the message was sufficient to suggest that it was intended as the acceptance of an offer involving a business transaction, and to make it the duty of the company, if it desired further information, to request it. Telegraph Co. v. Adams, 75 Tex. 535, 12 S. W. 857, 6 L. R. A. 844 [16 Am. St. Rep. 920]. The most that can be said in favor of defendant on this proposition is that it appeared to its agent that the filing of the message, without delivery of it to the addressee, might or might not have the effect of completing a contract; its effect in this regard depending on other facts not disclosed. The obvious purpose of the message was to communicate to those to whom it was addressed notice of the acceptance of an offer, and the party whose rights depended upon the delivery of such notice was entitled to have it properly sent and delivered; and it was wholly immaterial to the company which party that was. Or, if its action could in any way properly have depended on its knowledge of this fact, it was its duty to seek further information."

The holding of the Court of Civil Appeals in this case, in substance, is: That the filing of the message by Bell with the agent of defendant in error for transmission and delivery to Peavey, the agent of Calloway, closed the contract for the exchange of properties, and Bell's cause of action is against Calloway, and not against defendant in error for negligent delay in the transmission and delivery of the message to Peavey. This holding of the Court of Civil Appeals, under the facts of this case, is erroneous. A proper construction of the language of the telegram reasonably indicated to the defendant in error that, while there was a business transaction involved and on the eve of consummation, yet the sender of the telegram required, as a prerequisite to the closing of his part of the trade, that the proposition which had previously been made in the correspondence to him by Peavey, who was only acting as the agent of the owner, the reception of a wire from the owner to him confirming what Peavey had represented to him in the correspondence, and it further indicated to the agent of the defendant in error that, unless this confirmation should be wired to him by the owner of the Houston property, the trade might not be consummated. In other words, the proper construction of the language of the telegram is such that, without this confirmation being received by the plaintiffs in error, from the owner of the Houston property, the former would not be in a position to enforce a specific performance of the contract against the owner of the Houston property. The minds of the owners of the respective pieces of property had not met at that time.

It is true that, under the facts found by the trial judge and approved by the Court of Civil Appeals, the plaintiffs in error have suffered a loss of $2,500 on account of the failure of the defendant in error to discharge its duty as indicated by the language of the message placed in its hands for delivery, but we have not been able to reach the conclusion that the owner of the Houston property had disposed of this property to other parties at the time the contents of the telegram had

been delivered. This owner of this property, among other things, testified as follows: "My name is J. C. Calloway. * * * I owned the duplex apartment house located at 4110 and 4112 St. Emanuel Street, Houston, Texas, for a period of time immediately prior to October 20, 1928." (It will be noted that the telegram was dated October 17, 1928, and the information contained in the telegram was delivered to the agent of the owner of the Houston property six days later.) Speaking of the proposed exchange to which the telegram had reference, the witness says: "The reason the exchange was not made was because I waited for several days to hear from Mr. Bell accepting the proposition that I had made and having not heard from him within a reasonable time, I contracted with other parties to make a trade of my property; I learned sometime later, however, that the reason that I did not hear from Mr. Bell was because of the non-delivery of the telegram that Mr. Bell had promptly transmitted to Mr. John T. Peavey, but which message was never delivered to Mr. Peavey. I do not now own said apartment house. I waited for several days to hear from Mr. Bell but did not hear from him. I then entered into a contract to trade my property to other parties and have since said time made another trade and disposed of the property." It will be noticed from an inspection of the testimony of the owner of the Houston property, above quoted, that he is very indefinite as to what he did with reference to his property and to whom he disposed of it, and the date of the transaction, all of which he knew definitely. The telegram was sent on the 17th of October, and, though the telegram was not delivered, a copy of it was received on the 23d of October. If the owner of the Houston property, J. C. Calloway, had not made a binding contract with any one else on the 23d of October, then under the findings of fact by the trial judge he, being in a position to carry out the contract with the plaintiffs in error, failed to do so. Though his testimony leads to the inference that at the time the information contained in the telegram had been received he had already legally contracted to sell the property to some one else, yet, in view of the general nature of his statements on that subject, and in view of the fact that he had definite information as to the date when he had disposed of the property, and to whom he disposed of it and other information which the court was entitled to have, and which the plaintiffs in error could have elicited from the witness, we are not satisfied that the plaintiffs in error have discharged the burden which the law placed upon them of showing by satisfactory evidence that the defendant in error is liable to pay them the damages resulting from its failure to deliver the telegram promptly on account of the fact that the proximate cause of the damage sustained by the plaintiffs in error was the inexcusable negligence of the defendant in error in failing to deliver the telegram it contracted to deliver.

Such being the state of the record and because of the error of the Court of Civil Appeals heretofore discussed, as well as on account of the failure of the plaintiffs in error to show by testimony evidently within their power, if such testimony in fact existed, that, at the time the contents of the telegram were actually received by the agent of the owner of the Houston property, the latter had at that time justifiably concluded that the plaintiffs in error had declined to make the exchange of property, and in addition thereto that he had made a legally binding contract to dispose of the property to others, we recommend that the judgments of the Court of Civil Appeals and that of the district court be reversed, and that the cause be remanded to the district court for another trial.

CURETON, C. J.

Judgments of the Court of Civil Appeals and district court are both reversed, and cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.