RENDERED: JULY 25, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0042-MR

PULASKI PROPERTIES, INC.                                          APPELLANT

v.          APPEAL FROM PULASKI CIRCUIT COURT
            HONORABLE TERESA WHITAKER, JUDGE
            ACTION NO. 15-CI-00462

NEAL HANEY AND LAKE
CUMBERLAND INVESTMENTS,
LLC                                                               APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ECKERLE, L. JONES, AND KAREM, JUDGES.

JONES, L., JUDGE: Pulaski Properties, Inc., (PPI) appeals from two final orders

the Pulaski Circuit Court entered on August 30, 2023, which respectively: (1)

awarded PPI breach of contract damages against appellee Lake Cumberland

Investments, LLC (LCI), but denied it prejudgment interest; and (2) denied PPI's

request for specific performance as "an additional remedy" for LCI's breach of contract. Upon review, we affirm.

## I. BACKGROUND

On November 30, 2012, PPI entered into a written agreement with LCI which, in relevant part, required LCI to sell PPI a certain piece of real estate for $55,000 on January 1, 2013, free of "all liens, etc[.]" But, no sale of the subject property was made on January 1, 2013, or thereafter; and no written demand for sale of the property was made until May 8, 2015, the date PPI filed suit against LCI in Pulaski Circuit Court for specific performance of the contract. On December 27, 2016, PPI then amended its complaint to allege that "in the alternative to the relief sought in the initial Complaint, and/or in addition to the relief sought in the initial Complaint," it was also making claims:

> A. For compensatory damages for the full amounts paid by the Plaintiff which have been received by [LCI], and for all amounts paid by [PPI] which have otherwise been applied to the improvement, maintenance, repairs, insurance, and indebtedness secured by said property, and in any other way benefiting [LCI] with respect to this property; [and]
>
> B. For prejudgment interest thereon at a rate consistent with applicable law[.]

PPI's breach of contract claim against LCI proceeded to trial in May of 2023. There, PPI adduced evidence of ancillary expenditures it had made toward the property after January 1, 2013, including payments for improvements

-2-

which, it contended, had caused the value of the property to appreciate beyond

$55,000.  Following the close of evidence on May 9, 2023, the circuit court

conferenced with the parties regarding the jury instructions; and it approved and

accepted the following instruction relative to PPI's breach of contract damages:

> Answer this Instruction only if you have found from the evidence a breach of contract by the Defendant (Lake Cumberland Investments, LLC).
>
> The term "damages" means a sum of money that will fairly and adequately compensate a party injured by the actions of others.  If you find that the Defendant breached contractual obligations to the Plaintiff, then you should award to the Plaintiff that sum of money that would place the Plaintiff in the same position in which it would have been in if the contract had been performed.
>
> We, the jury, award $_____ [Not to exceed $40,000].[1]

The jury was provided this instruction.  And, following deliberations,

the jury determined LCI had indeed breached its contract with PPI; and that PPI

was entitled to damages in the amount of $25,000.  On August 30, 2023, the circuit

court then entered judgment in conformity with the jury's verdict, along with a

separate order denying PPI's prior request for specific performance.  On

September 7, 2023, PPI moved the circuit court to alter, amend, or vacate both its

judgment and separate order – the former because it did not award PPI

---

[1] The circuit court limited PPI's potential recovery to the difference between (1) a $95,000 option valuation that Neal Haney, one of LCI's members, later placed on the property in 2016, and (2) the $55,000 price specified in the November 30, 2012 contract.

prejudgment interest; the latter because, in PPI's view, the circuit court should have exercised its equitable discretion to also "grant specific performance as an additional remedy for the Plaintiff herein."[2] The circuit court denied both of PPI's motions. This appeal followed. Additional facts will be discussed in our analysis below.

## II. ANALYSIS

PPI contends "the decision of the Pulaski Circuit Court with respect to the denial of the remedy of specific performance and the award of prejudgment interest [for its $25,000 damage award] must be reversed and remanded for an award of *both* of those remedies."[3] We will address these points in turn.

### 1. Specific performance

The circuit court denied PPI's request for specific performance because it determined monetary damages were sufficient *in lieu of* that remedy. But, as PPI later clarified in its motion to alter, amend, or vacate (which the circuit court likewise denied), PPI was not requesting specific performance *in lieu of* monetary damages; it was requesting specific performance "as an additional remedy" beyond monetary damages. Likewise, PPI is not asking this Court to review whether the circuit court abused its discretion by determining the remedy of

---

[2] *See* Record at 269 (PPI's September 8, 2023 motion to alter, amend, or vacate).

[3] *See* Appellant's brief at 8; Appellant's reply brief at 6 (emphasis added).

specific performance was not a viable *alternative* to the jury's award of damages.[4]

Its sole argument regarding specific performance is, in relevant part, as follows:

> While specific performance is an equitable remedy, seeking such [a] remedy does not preclude an action for damages as well. In *Billy Williams Builders & Developers, Inc. v. Hillerich*, 446 S.W.[2d] 280 (Ky. App. 1969), purchasers were allowed to pursue both specific performance of a contract to purchase real estate and also damages for defective construction of home. In the case of *Givens v. Boutwell*, 701 S.W.2d 146 (Ky. App. 1985), purchasers were entitled to specific performance pursuant to a real estate option to purchase, as well as interest on royalties which purchasers should have obtained. These cases, and the evidence of LCI's benefit from Pulaski's payments to improve property which LCI wrongfully refused to convey, support the Appellant's entitlement to *both specific performance and the damages as awarded by the jury*.
>
> There is no evidence that the Appellant was guilty of fraud, illegal or inequitable conduct. The Appellant complied with all terms of the contract as modified at the request of the Appellees. It was the Appellees, not the Appellant, who breached.
>
> The Appellant is not made whole by a jury verdict in the amount of $25,000. While recognizing that specific performance is an equitable remedy, subject to the Court's reasonable discretion, . . . discretion however, is not an arbitrary or capricious one. Specific

---

[4] *See Twyford v. Twyford*, 243 S.W.2d 930, 933 (Ky. 1951) (explaining, "Specific performance is not of absolute right. It rests entirely in judicial discretion, exercised, it is true, according to the settled principles of equity, and not arbitrarily or capriciously, yet always with reference to the facts of the particular case." (Internal quotation marks and citation omitted)).

-5-

> performance is necessary and appropriate to prevent unjust enrichment[5] to Appellees.

Appellant's brief at 6 (internal quotation marks and citations omitted) (emphasis added).

PPI's argument that it was entitled to "both specific performance and the damages awarded by the jury" has no merit. The goal of damages in a breach of contract action is the awarding of a sum which is the equivalent of performance of the bargain – the attempt to place the plaintiff in the position he would be in if the contract had been fulfilled. *See AnyConnect US, LLC v. Williamsburg Place, LLC*, 636 S.W.3d 556, 564 (Ky. App. 2021). Here, as set forth above, the jury determined that when LCI breached its contract with PPI, LCI deprived PPI of the performance of PPI's bargain with LCI (*i.e.*, the right to purchase the piece of real estate for $55,000 on January 1, 2013, free of "all liens, etc[.]") The jury considered evidence that PPI's "payments to improve [the] property" appreciated the property's value and thus *enhanced* the benefit PPI would have otherwise derived from the performance of its bargain with LCI. Moreover, the jury determined an award of $25,000 in damages *fully compensated* PPI for being deprived of that performance.

---

[5] PPI also asserted a claim of unjust enrichment against LCI which has never been resolved and, as the circuit court directed in its August 30, 2023 order, remains pending. The circuit court's adjudications of the claims at issue in this matter were made final and appealable pursuant to Kentucky Rule of Civil Procedure (CR) 54.02(1).

In other words, the jury's award of damages was the monetary equivalent of specific performance of the contract. And that, in turn, is what largely distinguishes this case from *Hillerich* and *Boutwell*, the two cases cited by PPI. Unlike here, neither of those cases involved plaintiffs who were awarded damages designed to include the entire monetary equivalent of specific performance of the contract. *See Hillerich*, 446 S.W.2d at 284 ("We conclude that appellees' remedies were not inconsistent so as to require an election of remedies and that the chancellor did not err in granting specific performance and directing that damages [for defective construction] be ascertained by the common law division of the court."); *see also Boutwell*, 701 S.W.2d at 148 ("[T]he trial court erred in failing to award appellees interest on the royalties from the contract date of November 1, 1976 as an additional set-off against the purchase price.").

PPI is arguing it was entitled to recover *twice* for the same breach of contract: It wants to keep what the jury awarded it for being *deprived of the right* to purchase the piece of property for $55,000 (*i.e.*, $25,000); but it also wants to *enforce the right* to purchase the piece of property for $55,000 (through the "additional remedy" of specific performance). However, "it has long been a rule of the common law to allow only one recovery for one wrong, although several different remedies may be provided." *Louisville Ry. Co. v. Raymond's Adm'r*, 135 Ky. 738, 123 S.W. 281, 283 (1909); *see also MV Transp., Inc. v. Allgeier*, 433

S.W.3d 324, 336 (Ky. 2014) (explaining "[a] party aggrieved by the acts of another, or by the concurring acts or more than one person, is entitled to only one recovery." (Internal quotation marks and citations omitted)).

Tangentially, PPI complains that what it was awarded by the jury:

[I]s inadequate to give Appellant the benefit of its bargain, especially considering the substantial sums paid by Appellant to improve and maintain the property relative to the receipt of only slightly more than half of the breach of contract damages. Appellant spent over $35,000, not including any interest and continuing insurance, for the improvements, loan interest, property taxes, utilities, and insurance on this specific property. Appellant did not know until during the trial that the Court would limit damages to the difference between the purchase price and the option price set by Haney.

Appellant's reply brief at 3.

However, if PPI believed the circuit court's jury instructions were erroneous, it should have objected. It did not do so and makes no such argument on appeal. If PPI believed the jury's $25,000 award did not fully compensate it for LCI's breach and was contrary to the evidence, PPI should have preserved that argument by moving for a new trial. *See* CR 59.01(d). It did not do that, either. And, PPI was not entitled to alternatively keep that award *and* receive "specific performance as an additional remedy" for what it perceived was an insufficient judgment. That is not an "additional remedy" Kentucky law affords in this circumstance, and the circuit court committed no error by denying it.

-8-

## 2. Prejudgment interest

PPI asserts the circuit court erred by denying it prejudgment interest from May 8, 2015 (the date of its complaint) through May 9, 2023 (the date that the jury rendered its verdict). Its arguments in that regard are two-fold. First, PPI contends it was entitled to prejudgment interest on its award of $25,000 "as a matter of right" because its award constituted "liquidated damages," rather than "unliquidated damages." Before proceeding to the substance of PPI's argument in this vein, it is important to delineate the difference between those types of damages:

> "[P]rejudgment interest is awarded as a matter of right on a liquidated demand, and is a matter within the discretion of the trial court or jury on unliquidated demands." *3D Enterprises Contracting Corp. v. Louisville and Jefferson County Metropolitan Sewer District*, 174 S.W.3d 440, 450 (Ky. 2005); *Nucor Corp. v. General Elec. Co.*, 812 S.W.2d 136, 141 (Ky. 1991). Whether damages qualify as liquidated or unliquidated, however, is not always clear.
>
> A damages claim is liquidated if it is "of such a nature that the amount is capable of ascertainment by mere computation, can be established with reasonable certainty, can be ascertained in accordance with fixed rules of evidence and known standards of value, or can be determined by reference to well-established market values." *3D Enterprises*, 174 S.W.3d at 450 (citation omitted). Examples include "a bill or note past due, an amount due on an open account, or an unpaid fixed contract price." *Nucor Corp. v. General Elec. Co.*, 812 S.W.2d at 141. In contrast, an unliquidated damages claim is one which has "not been determined or

-9-

calculated, . . . not yet reduced to a certainty in respect to amount." *Id.* (citations omitted). An unliquidated claim is unspecified and undetermined prior to a breach. In determining whether a claim is liquidated or unliquidated, "one must look at the nature of the underlying *claim*, not the final award." *3D Enterprises*, 174 S.W.3d at 450.

*Ford Contracting, Inc. v. Kentucky Transp. Cabinet*, 429 S.W.3d 397, 414 (Ky. App. 2014).

In its two-sentence, post-judgment motion for prejudgment interest, PPI stated it was entitled to prejudgment interest because its damages qualified as "liquidated." It offered no rationale for that conclusion.[6] The circuit court denied PPI's motion, explaining:

> Based upon the information in the underlying claim and a careful analysis of said claim, the Court concludes that the damages that the Plaintiff has sought in this matter are unliquidated. As part of its request for relief in its Amended Complaint, Plaintiff requested, among other things, compensatory damages for the amounts paid by the Plaintiff which had been applied to the improvement, maintenance, repairs, insurance, and indebtedness of the property. Such damages include costs that were incurred after the breach alleged in the complaint, and therefore could not have been known at the time of said breach. Therefore, as the claims were for damages unspecified and undetermined at the time of the breach, the damages requested are unliquidated.

December 7, 2023 Order at 2.

---

[6] *See* PPI's September 7, 2023 Motion for Prejudgment Interest, Record at 232.

PPI did not move the circuit court to make any additional findings on this issue and instead appealed. In its opening brief before this Court, PPI only somewhat elaborated on its argument that its damages were liquidated: "The lost profit damages awarded in this case are such an amount. Appellee [Neal] Haney himself set the option price in 2016, and has collected all payments and profits on the property since 2016."[7] In its reply brief, however, PPI finally added flesh to its previously skeletal arguments:

> Appellees' arguments (and the Trial Court's rulings) rely upon an incorrect characterization of *when* the breach of contract occurred. In accordance with the pleadings and the overwhelming weight of the evidence, the breach of contract did not occur in 2013, but, rather, in 2015. (R., Complaint, Exhibit B thereto and Amended Complaint, attached hereto as Appendix, Ex. 1, and were furnished with Appellant's Civil Appeal Prehearing Statement).

> [Jerome] Stykes[8] explained that there was no planned closing on January 1, 2013, "because Neal [Haney][9] wanted to keep the loan in place." (R., Stykes deposition, p. 58; see Appellees' Brief, Appendix, Ex. 3; see also pp. 33-37; pp. 41-42; pp. 51-53, attached hereto as Appendix, Ex. 2, cited to the Court in Response to Appellees' Motion for Partial Summary Judgment, R., p. 65). Haney likewise admitted leaving the note in place at the bank. (Haney deposition, p. 31 and p. 49; Appendix, Ex. 3). Haney also admitted, repeatedly, that his reasons

---

[7] Appellant's brief at 7.

[8] Jerome Stykes is the principal and representative of PPI.

[9] Appellee Neal Haney is a member of LCI.

-11-

for not signing the deed to Appellant in 2015 was because he had understood he was supposed to keep some interest in the real estate: "I refused to sign it because McShurley & Morrow (law firm who prepared [the] deed) suggested to me that I didn't need to sign it because I wasn't gaining any interest." (*Id.*, p. 26, Ex. 3; see also p. 36). Haney admitted that he neither refunded the money paid by Appellant nor tendered a corrected or amended deed. (*Id.*, p. 40).

At trial, LCI Managing Member [Stephen] Acton corroborated Stykes' testimony that Haney's refusal to sign the deed had nothing to do with Appellant's actions on this particular property. Acton likewise agreed that there was no expectation that Appellant would pay the purchase price until Appellant was offered a fully executed deed. (VR, 5/8/23, Acton testimony, 2:17:53-2:18:23; 2:31:55-2:32:18). Haney never told Acton that Haney was refusing to sign the deed because of a failure by Appellant to tender payment. (*Id.*, 2:39:48-2:40). Haney himself admitted that there would be no payment due until exchanged, "hand in hand," with a completed deed. (VR, 5/8/23, Haney testimony, 3:27-3:28).

Stated another way, conspicuously absent from Appellees' Brief are any citations to testimony from any party (cp./cf. Appellees' counsel's arguments) claiming that the closing of the transaction was supposed to occur on January 1, 2013. To the contrary, the parties to the agreement had determined to keep the loan in place, and, with Appellees' direction and knowledge, Appellant made payments for the improvements, taxes, insurance, and interest on the loan payments for two more years. That preserved Appellees' anticipated profit between the initial purchase price and the proposed sale price. (VR 5/9/23, Stykes testimony, 9:57:17-10:02:09).

Appellant's reply brief at 1-2 (emphasis original).

In other words, PPI is claiming the circuit court should have determined from the evidence, for purposes of ascertaining the nature of its damages, that the parties *modified* the November 30, 2012 contract to (1) extend the date of performance to 2015; and (2) incorporate, as liquidated damages, the amounts paid by PPI after January 1, 2013, that had been applied to the improvement, maintenance, repairs, insurance, and indebtedness of the property.

We disagree. As a preliminary matter, even if some evidence might have supported that a modification occurred, other evidence was to the contrary. Mutual assent is required to modify a contract. *See Abbott v. Chesley*, 413 S.W.3d 589, 601 (Ky. 2013). PPI ignores that the testimony of its own principal and representative, Jerome Stykes, flatly contradicted the notion that such mutual assent occurred here: When asked if the November 30, 2012 contract had ever been modified in any way, Stykes testified, "Not to my knowledge. Certainly not in writing."[10] Furthermore, the only indication PPI provided in its complaint regarding *when* the November 30, 2012 contract was breached was the contract itself, appended as an exhibit, which unambiguously provided that the date of performance was January 1, 2013.

---

[10] *See* Jerome Stykes' May 9, 2023 trial testimony at 11:40:29-11:40:37.

That aside, even if PPI's more fleshed-out argument set forth above had merit – and had been properly presented to this Court[11] – its overriding problem is one of preservation. The essence of its argument is that the circuit court failed to consider, and thus failed to make any *finding* with respect to, whether the parties modified the November 30, 2012 contract. But, PPI did not ask the circuit court to specially instruct the jury to determine when the November 30, 2012 contract was breached; nor did PPI move the circuit court – following either the August 30, 2023 judgment that omitted prejudgment interest, or the circuit court's December 6, 2023 order specifically denying it – to make any findings regarding modification. PPI is basically asking this Court to make that determination in the *first instance*.

But, PPI has deprived this Court of authority to assess whether any such modification occurred. As stated by the Kentucky Supreme Court in *Eiland v. Ferrell*:

> [i]f the findings are objectionable on grounds other than insufficiency of evidence, an objection or appropriate motion should be made to identify the defect. Such would surely apply where findings are ambiguous or incomplete. In particular, CR 52.04 requires a motion for additional findings of fact when the trial court has failed to make findings on essential issues. Failure to bring

---

[11] "The reply brief is not a device for raising new issues which are essential to the success of the appeal." *Best v. West American Ins. Co.*, 270 S.W.3d 398, 405 (Ky. App. 2008) (internal quotation marks and citations omitted).

-14-

> such an omission to the attention of the trial court by means of a written request will be fatal to an appeal.

937 S.W.2d 713, 716 (Ky. 1997) (citation omitted). Thus, "[t]he thread which runs through CR 52 is that a trial court must render findings of fact based on the evidence, but no claim will be heard on appeal unless the trial court has made or been requested to make unambiguous findings on all essential issues." *Id*.

Stated otherwise, "[t]he appellate court reviews for errors, and a nonruling cannot be erroneous when the issue has not been presented to the trial court for decision." *Commonwealth v. Smith*, 542 S.W.3d 276, 285 (Ky. 2018) (internal quotation marks and citation omitted). Absent any finding from the circuit court on the essential issue of the purported modification of the November 30, 2012 contract, we have nothing to review; and, absent any request from PPI to the circuit court to make such a finding, we cannot reverse the circuit court's decision on this point. *See* CR 52.04.

Thus, we cannot find error in the circuit court's determination, for purposes of ascertaining the nature of PPI's damages, that when LCI failed to render performance on January 1, 2013, LCI was in breach as of that date. With that in mind, PPI does not dispute that it incurred the costs that gave rise to its damages (*i.e.*, its claimed improvement, maintenance, repair, insurance, and property indebtedness expenses) after that date. Nor does it dispute that those costs were never contemplated in the November 30, 2012 contract, as written.

-15-

Therefore, the circuit court committed no error in determining PPI's damages were "unliquidated" because they were "unspecified and undetermined prior to [the] breach." *See Ford Contracting*, 429 S.W.3d at 414.

For its second argument, PPI asserts it was entitled to prejudgment interest on its award of $25,000, even if that was an award of unliquidated damages, because "the Appellees have and continue to profit from this realty, improved and maintained at Appellant's expense,"[12] and have done so "for approximately eight years post their own breach."[13] To be sure, a trial court may exercise discretion to award prejudgment interest on unliquidated damages if doing so is consistent with justice and equity. *See Nucor Corp.*, 812 S.W.2d at 144-45 (extensively discussing this point). Here, the circuit court's explanation for denying PPI prejudgment interest for its award of unliquidated damages was as follows:

> Upon review of the entire litigation history of this matter, the Court notes that there were several lengthy delays such as the twenty-nine (29) months this matter was on appeal due to the granting of partial summary judgment and the COVID-19 Pandemic which prevented this case from being tried in a timely manner. Noting these lengthy delays, it would be unequitable to award prejudgment interest against the Defendants in this matter.

---

[12] Appellant's brief at 7.

[13] Appellant's reply brief at 6.

*See* December 7, 2023 Order on Plaintiff's Motion for Prejudgment Interest.

PPI's only response to the circuit court's reasoning is that, in its view, who or what caused the pretrial delays in this case was irrelevant. We disagree. Again, the metrics for ascertaining the propriety of awarding prejudgment interest regarding unliquidated damages are *justice* and *equity*; and those metrics inherently require consideration of whether, and to what extent, the party against whom such an award is sought was at fault for an offending delay in the proceedings. Based on the circumstances of this case, we cannot say the circuit court abused its discretion by denying PPI prejudgment interest.

We find any remaining contentions of error to be unpreserved, unpersuasive, moot, or without merit.

### III. CONCLUSION

Considering what is set forth above, we AFFIRM the two final orders of the Pulaski Circuit Court entered August 30, 2023.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Winter R. Huff
Somerset, Kentucky

BRIEF FOR APPELLEES:

Bryan K. Sergent
Manchester, Kentucky